UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FT. JOHNSON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 7:24-PO-00351-01** |
| **VERSUS** | : | |
| **VINCENT H VILLARREAL (01)** | : | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the court is a Motion to Suppress Evidence and Statements filed by defendant Vincent Villarreal. Doc. 9. After considering the parties' written submissions and evidence and argument adduced at hearing, and for the reasons that follow, the motion is **DENIED**.

### I.
#### OVERVIEW

Defendant was arrested and ultimately issued a citation for driving while intoxicated. Doc. 1. Defendant argues there was no probable cause for his arrest and so evidence obtained after that arrest, including statements and chemical breath test results, must be excluded. Specifically, Defendant contends probable cause could not be found in this case because the arresting officer failed to follow standard protocols in administering standardized field sobriety tests ("SFSTs"), such that the results of the SFSTs were unreliable. In this case, the totality of circumstances surrounding Defendant's arrest, as adduced by the arresting officer's testimony and the video footage of the field sobriety testing, support a finding of probable cause.

1

## II.
## BACKGROUND

The following facts are derived from the parties' written submissions and testimony at hearing. At about 2:00 a.m. on February 10, 2024, Defendant approached the front gate of the U.S. Army installation at Fort Johnson, Louisiana, in his vehicle. Military Police Officer Christopher Camacho was stationed as a guard at the entrance. Officer Camacho and his fellow guards were charged with examining the identification of all visitors to Fort Johnson.

When Officer Camacho bent towards Defendant's window to retrieve his identification, he smelled alcohol on Defendant's breath, and he observed that Defendant's eyes were bloodshot and watery and his speech was slurred. When asked, Defendant stated he was returning from a local bar, but he denied he had been drinking. After scanning Defendant's driver's license, Officer Camacho asked Defendant to exit the vehicle and commenced SFSTs because his personal contact with Defendant led him to believe Defendant had been drinking. Officer Camacho concluded that the SFSTs resulted in "positive clues for intoxication," placed Defendant under arrest for DWI, and took him to the station for chemical breath (Intoxilyzer 9000) testing. Doc. 1, att. 2.

Defendant does not contest the legality of the initial stop.[1] In briefing, he argued there was no reasonable suspicion to extend the stop after the identification check, but he conceded at hearing that Officer Camacho had reasonable suspicion to extend the stop to investigate the possibility of intoxication.[2] Defendant argues, however, that Officer Camacho conducted the SFSTs in so flawed

---

[1] Testimony from Officer Camacho supports the Government's characterization of the initial stop as a "Force Protection Stop" made under 32 C.F.R. § 634.7 and the installation commander's policy because Defendant was attempting to access the installation via an access control point. *See United States v. Green*, 293 F.3d 855, 862 (5th Cir. 2002) for a general discussion of the constitutionality of a suspicionless checkpoint-style stop at a military installation.

[2] Recording of Hearing at 2:03 ("we are not debating in this case whether or not there is reasonable suspicion."). The Court agrees that there was reasonable suspicion to extend the stop. Officer Camacho testified that, while examining the ID, he observed alcohol on Defendant's breath, bloodshot eyes, and slurred speech. These facts supported the reasonable suspicion that Defendant had been driving under the influence, justifying further investigation.

2

a manner that there could be no probable cause for arrest, emphasizing that the Government bears the burden of demonstrating probable cause for a warrantless arrest. Defendant moves to suppress "all evidence obtained as a result" of his arrest, including any statements he made after arrest and the results of the Intoxilyzer 9000 test. Doc. 9, p. 1.

At the hearing of this motion, Officer Camacho was questioned in detail about his administration of the SFSTs, the video recording of which was admitted in evidence and reviewed in part at hearing. Officer Camacho candidly admitted he conducted non-standard versions of some portions of the SFSTs, deviating from testing protocol in particulars explained below. Officer Camacho also agreed that if any one of the SFST elements is changed, the validity of the test is compromised.

### III.
### LAW AND APPLICATION

**A.      Evidence obtained pursuant to an improper arrest may be suppressed.**

The Fourth Amendment protects an individual's right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest violates a suspect's Fourth Amendment rights "if the arresting officer lacks probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985).

The remedy for evidence seized by law enforcement in violation of the Fourth Amendment is the exclusion at trial of the unconstitutionally seized evidence. *Davis v. United States*, 564 U.S. 229, 236 (2011). This exclusionary remedy is not a personal constitutional right, but a remedy aimed at preventing police misconduct "through its deterrent effect." *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 94 S. Ct. 613, 620 (1974)).

On a motion to suppress, the burden generally rests on the defendant to show, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993). However, "if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." *United States v. de la Fuente*, 548 F.2d 528, 533–34 (5th Cir. 1977) (quoting *Manuel v. United States*, 355 F.2d 344 (5th Cir. 1966)); *United States v. Pasillas*, No. 2:08 CR 0111, 2008 WL 5245694, at *1 (W.D. La. Dec. 15, 2008).

**B.     Probable cause for arrest exists when, under the totality of the circumstances, there is a fair probability of criminal activity.**

There is probable cause for an arrest when "under the totality of the circumstances, there is a 'fair probability' that a crime occurred." *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023). The probable-cause analysis is objective. Probable cause exists "if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). In other words, "Probable cause is established by 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro,* 568 F.3d at 204).

Probable cause "is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotations omitted). "[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Scott*, 69 F.4th at 255 (quoting *United States v. Garcia*, 179 F.3d 265, 269

4

(5th Cir. 1999)).  Indeed, "[p]robable cause 'is not a high bar.'" *Wesby*, 583. U.S. at 57 (quoting *Kaley v. United States,* 571 U.S. 320, 338 (2014)); *see also Forbes v. Harris Cnty., Texas*, No. CV H-17-2256, 2019 WL 2085670, at *6 (S.D. Tex. May 13, 2019), *aff'd*, 804 F. App'x 233 (5th Cir. 2020).

In the context of DWI arrests, "[P]robable cause for an arrest based on intoxication can be grounded in the arresting officer's observations." *Jason v. Par. of Plaquemines*, No. CV 16-2728, 2016 WL 4623050, at *3 (E.D. La. Sept. 6, 2016) (citing *State v. Wells*, 45 So. 3d 577, 583 (La. 2010)).  Imperfect administration of SFSTs does not necessarily negate the possibility of probable cause.  *See Allemang v. Louisiana Through Dep't of Pub. Safety*, No. 2:19-CV-128, 2020 WL 2220422, at *5 (W.D. La. May 7, 2020), *aff'd*, No. 21-30360, 2022 WL 3226620 (5th Cir. Aug. 10, 2022).  The totality of the circumstances may give rise to probable cause for a DWI arrest even in the absence of SFSTs.  *See, e.g.*, *Wilson v. Cockrell*, No. 4:22-CV-03906, 2023 WL 8195199, at *8 (S.D. Tex. Nov. 27, 2023) ("If Wilson had been exhibiting such obvious signs of intoxication, Deputy Cockrell likely would have had probable cause to arrest him for DWI without performing field sobriety tests.").  "[T]he purpose of the field tests is to confirm or dispel the officer's suspicion that an individual is driving while impaired by alcohol." *United States v. Bourgeois*, No. Crim.A 3:06CR51 TSL-JCS, 2007 WL 2219335, at *2 (S.D. Miss. July 30, 2007).  On the other hand, it may be appropriate to disregard the results of SFSTs when flaws in the administration of the tests compromise the validity of the results:

> It is imperative that police officers—who are expected to interact with, and potentially arrest, individuals who may be intoxicated—have correct knowledge of how to demonstrate and interpret the field–sobriety tests on which the liberty of those individuals may depend. It is not objectively reasonable to rely on a performance in a field–sobriety test for a finding of probable cause for a DUI arrest when the test has been administered incompetently.

*Strickland v. City of Dothan, AL*, 399 F. Supp. 2d 1275, 1289 (M.D. Ala. 2005), *aff'd*, 210 F. App'x 983 (11th Cir. 2006). Nevertheless, this Court is not aware of any "legal authority requiring a field sobriety test to establish probable cause for a DWI arrest." *Forbes*, No. CV H-17-2256, 2019 WL 2085670, at *8 (S.D. Tex. May 13, 2019) ("But Forbes has not cited to legal authority requiring a field sobriety test to establish probable cause for a DWI arrest, and the court has found none.").[3]

C. **The administration of the SFSTs in this case, while flawed, yielded sufficient clues of intoxication that, when combined with the officer's other observations, established probable cause for Defendant's arrest.**

To confirm his suspicions that Defendant was under the influence, Officer Camacho administered the following SFSTs. By his own admission, Officer Camacho failed in many respects to follow appropriate protocols in conducting these SFSTs.

   *1. Involuntary eye movement*

The first SFSTs Officer Camacho conducted were for involuntary eye movement, beginning with a test for Horizontal Gaze Nystagmus.[4] These tests involve instructing the subject to watch a stimulus such as a penlight so that the officer can look for clues including involuntary eye movement or inability of the eyes to smoothly follow the stimulus.[5] Officer Camacho testified that Defendant exhibited the following clues indicating intoxication: Horizontal Gaze Nystagmus

---

[3] *See also Bannister v. Conway*, No. 1:12-CV-1487-TWT, 2013 WL 5770802, at *5 (N.D. Ga. Oct. 23, 2013) ("The Plaintiff incorrectly presumes that evidence from a field sobriety test is necessary to establish probable cause for a DUI charge."); *McMillian v. Philadelphia Newspapers, Inc.*, No. CIV.A. 99-2949, 2001 WL 267867, at *3 (E.D. Pa. Mar. 15, 2001) ("Surely there are facts and circumstances that may exist in the absence of a field sobriety test sufficient to warrant an officer believing that a suspect is intoxicated. For example, slurred speech, loss of balance, scent of marijuana, blood shot eyes or erratic behavior consistent with someone whose mind is being effected by drugs or alcohol. . . . [T]he absence of a field sobriety test does not automatically render his arrest one without probable cause.").

[4] "Nystagmus is defined as an involuntary rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction and horizontal gaze nystagmus is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme." *Herrera v. Stephens*, No. 2:14-CV-366, 2015 WL 5332118, at *8 (S.D. Tex. May 11, 2015), *report and recommendation adopted*, No. 2:14-CV-366, 2015 WL 5332123 (S.D. Tex. Sept. 14, 2015).

[5] *Id.*

at Maximum Deviation, Lack of Smooth Pursuit, and Nystagmus Prior to 45 Degrees.[6] Officer Camacho also testified that he departed from standard protocol in administering these tests, including by holding the stimulus too close to the subject's face and failing to repeat at least two of the tests. He testified that the validity of the testing could be negatively impacted by the way he performed the testing. Because the Court lacks the expertise to determine whether Officer Camacho affected the validity of the tests by deviating from standard testing protocol, and because the Court cannot independently verify what Officer Camacho observed, the results of the eye movement testing will be disregarded in determining whether probable cause existed.

### 2. *Walk and Turn Test*

After conducting the eye movement testing, Officer Camacho administered the walk-and-turn test. Officer Camacho testified that Defendant again exhibited clues indicating intoxication: starting too soon, missing heel-to-toe, stepping off the line, and failing to keep foot planted during turn.[7]

The video clearly shows Defendant starting too soon, a positive clue for intoxication. Officer Camacho positioned himself in front and slightly to the right of Defendant so that his demonstration would proceed perpendicular to and clearly in Defendant's line of sight. Officer Camacho then placed his own feet in a heel-to-toe position and Defendant followed suit. Officer Camacho resumed a normal stance and Defendant stayed standing with his right foot directly in front of his left toe while Officer Camacho read from a card and spoke to Defendant. Officer Camacho sidestepped a few steps away from Defendant and positioned himself to begin to

---

[6] Recording of Hearing at 3:06. Officer Camacho indicated in his testimony that he identified other clues for intoxication on his probable cause report, but he could not recall them while testifying. The probable cause report was referenced during the hearing, but it was not received into evidence, and it does not appear on the record of this matter at this time.

[7] Recording of Hearing at 3:06:30 (beginning of direct examination); 3:52:40 (cross examination).

demonstrate the heel-to-toe walk, first placing his right foot in front of his left toe and then lifting his left foot as if to repeat the procedure. As Officer Camacho began his demonstration, Defendant also began walking heel-to-toe and the two almost collided. Officer Camacho gave him an instruction, Defendant returned to his starting position in the heel-to-toe stance, and Officer Camacho resumed his demonstration by taking three heel-to-toe steps and then turning with his left foot planted, slowly and deliberately emphasizing the manner of turning required.

Although Officer Camacho admitted "there seems to be some confusion" because he and Defendant nearly collided, he also testified that he would have instructed Defendant to maintain his starting position until instructed to begin walking.[8] There was no indication in the video or Officer Camacho's testimony that Officer Camacho's instructions caused Defendant to start walking while Officer Camacho was demonstrating or to simply not observe that his walking was leading him into Officer Camacho; in other words, any flaw in the administration of this test did not affect that Defendant's actions exhibited clues of impairment. The video therefore lends credence to Officer Camacho's testimony that Defendant exhibited at least one sign of intoxication on the walk-and-turn test. The remaining clues for which Officer Camacho cited defendant were not clearly visible on the video because of the camera angle.[9]

---

[8] Recording of Hearing, beginning at 4:03.

[9] Officer Camacho testified that he cited Defendant for exhibiting four clues on the walk-and-turn test: starts too soon, misses heel-to-toe (on step 8), steps off line (on step 7), and does not keep foot planted during turn. Recording of Hearing at 3:06:30 (beginning of direct examination); 3:52:40 (cross examination). The camera angle makes it impossible to verify whether Defendant missed a heel-to-toe or stepped off the line on steps 8-9, and Officer Camacho admitted in cross examination that Defendant did not appear to step off the line on step 7. Although Defendant's feet are not visible during the turn, the movement of his knees suggests that he lifted both feet during the turn, contrary to Officer Camacho's instructions and demonstration to keep the front foot planted and turn with a series of small steps using the other foot.

### 3. *One Leg Stand Test*

Officer Camacho next administered the one-leg stand test. "The one-leg-stand test is grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental agility, and its sole purpose is to reveal clues or symptoms of impairment." *McRae v. State*, 152 S.W.3d 739, 746 (Tex. App. 2004). Officer Camacho testified that this test requires the subject to stand with feet together, arms at the side, lift one foot approximately 6 inches off the ground, foot parallel to the floor, and count out loud by ones starting at 1,001.[10]

Officer Camacho testified Defendant again exhibited clues indicating intoxication: hopping, swaying while balancing, and putting a foot down.[11] The video clearly shows Defendant exhibiting these clues, and there is no indication that flaws in the administration of the test—if any—caused Defendant to exhibit those clues. In the video, Officer Camacho demonstrated by raising one foot off the ground. Defendant then lifted his foot, and approximately two seconds later he began to lower that foot while leaning to one side, losing his balance. Defendant hopped for several seconds on one foot quite a distance to his left in an apparent effort to regain his balance. Although Defendant did eventually regain his balance with one foot still in the air and hold that foot elevated for about 25 seconds, Defendant's initial exaggerated stumble cannot be overlooked.

While Officer Camacho may not have conducted the SFSTs in accordance with all prescribed protocols, the legal standard is not whether Defendant passed or failed properly administered tests. Instead, the question is whether, considering the totality of the circumstances, "the officer was aware of facts justifying a reasonable belief that an offense was being committed."

---

[10] Recording of Hearing at 4:06.

[11] Recording of Hearing at 3:07.

Here, the encounter with defendant occurred after 2:00 am in the morning. Officer Camacho testified Defendant smelled of alcohol, had bloodshot and watery eyes, and slurred his speech. Defendant admitted he was returning from a bar, though he denied consuming any alcohol. Upon undergoing SFSTs, flawed as they may have been, the video clearly shows actions and behaviors by Defendant that Officer Camacho could reasonably interpret as being consistent with impairment. The Court, therefore, finds the probable-cause standard was satisfied, and the arrest of Defendant was permissible.[12]

### III.
#### CONCLUSION

The Court finds Officer Camacho had observed enough to give rise to a "fair probability" that Defendant had been driving under the influence, given the totality of the circumstances. *See Allemang v. Louisiana Through Dep't of Pub. Safety*, No. 2:19-CV-128, 2020 WL 2220422, at *6 (W.D. La. May 7, 2020), *aff'd*, No. 21-30360, 2022 WL 3226620 (5th Cir. Aug. 10, 2022). Additionally, the Court finds Officer Camacho a generally credible witness, in part because of the readiness with which he admitted to errors in his own testing. Considering the foregoing, the Government has borne its burden of demonstrating that Officer Camacho had probable cause to arrest Defendant. Accordingly, the Motion to Suppress is **DENIED**.

**SO ORDERED** at Lake Charles, Louisiana, this 3rd day of January, 2025.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE

---

[12] The Court emphasizes that this decision should not be read to detract from the importance of properly administered SFSTs, or as authorization for law enforcement to be remiss in its responsibility to competently perform such tests. SFSTs are a vital tool for protecting the liberty interest of the individual suspect, as well as the safety interest of the general public; but like any tool, they and the product they produce are only as good as the artisan who employs them. Other sufficient indicia of impairment in this case overcame Officer Camacho's seemingly substandard performance of the SFSTs but does not excuse it.